STAR BUCKET PUMP CO. v. BUTLER MFG. CO.

(District Court, W. D. Missouri, W. D. July 8, 1912.)

No. 3,551.

1. PATENTS (§ 243*)—INFRINGEMENT—PATENT FOR COMBINATION.

A patent for a combination in which an essential element, constituting the principal part of the invention, is designed for a particular function, specifically described, is not infringed by a combination in which such element, although present in form, owing to a difference in the construction of the other parts, is wholly inoperative to perform the function specified, but is used for a different purpose.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 382–384; Dec. Dig. § 243.*

Patentability of combinations of old elements as dependent on results attained, see note to 91 C. C. A. 123.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PUMP-CURB RESERVOIR.

The Bartliff patent, No. 616,394, for a pump-curb reservoir, designed particularly for chain pumps, claim 1, construed, and held not infringed.

3. PATENTS (§ 328*)—DESIGNS—INVENTION—DESIGN FOR PUMP-CURB.

The Bartliff design patent, No. 28,190, for a design for a pump-curb, conceding that the subject is a proper one for a design patent, is void for lack of patentable invention, in view of prior structures.

In Equity. Suit by the Star Bucket Pump Company against the Butler Manufacturing Company for infringement of letters patent No. 616,394, for a pump-curb reservoir, granted to Charles A. Bartliff December 20, 1898, and design patent No. 28,190, for a design for a pump-curb, granted to the same patentee January 18, 1898. On final hearing. Decree for defendant.

F. R. Cornwall, of St. Louis, Mo., and Kimbrough Stone, of Kansas City, Mo., for complainant.

Wallace R. Lane, of Chicago, Ill., and George Y. Thorpe, of Kansas City, Mo., for defendant.

VAN VALKENBURGH, District Judge.   Both parties to this suit are corporate citizens of the state of Missouri—the complainant a resident of St. Louis, and the defendant a resident of Kansas City.   The complainant has filed its bill as the assignee and owner of letters patent of the United States No. 616,394 and No. 28,190; the former being a mechanical patent relating to pump-curb reservoirs, and the latter a design patent for a pump-curb.   It is charged that the defendant has infringed both patents, and the bill prays for the usual relief of injunction, accounting, and damages.   The defense assails both patents for want of patentable novelty and invention, and denies infringement.   It is also urged that the title to said patents does not appear to be in the complainant, but no stress is laid upon this contention either in argument or in brief. The design patent embraces but one claim, and the entire patent is, therefore, involved in the controversy.   The mechanical patent embraces two claims; the charge of infringement being made as to the first claim only.   This claim reads as follows:

"The combination with a pump-curb, of a reservoir, a spout which leads from said reservoir, a plate arranged within the reservoir, and fastening devices which pass through the pump-curb and engage the spout and said plate for clamping the parts together, substantially as described."

The history and object of this patent is disclosed by the original claims and correspondence set forth in the file wrapper and contents of complainant's mechanical patent.   The original specification recites:

"This invention relates to a new and useful improvement in 'reservoirs for pump-curbs', and particularly to that class of pumps known as 'chain pumps,' together with means for attaching the same thereto, the object being to construct a reservoir in a cheap and substantial manner, and, at the same time obviate the present objections existing in the usual form of reservoirs now in general use, the same being hereinafter mentioned, and another object is to construct a pump-curb which can be rapidly assembled.   With these objects in view, the invention consists, generally, stated, in a reservoir, a conduit pipe leading thereto, means for securing said conduit pipe to said reservoir, a spout leading from said reservoir, and means for securing said spout and reservoir to the pump-curb."

The objections to be obviated are thus stated:

"The usual form of reservoirs now in general use are made of galvanized, or sheet, iron, and are generally secured to one side of the pump-curb by means of a yoke, or stirrup-shaped bar of metal which passes around the outside of said reservoir, usually in a groove adapted to receive the same, while the free ends of said yoke pass through the curb and then through the flanges on the spout, and are threaded to receive suitable nuts.   This construction is, however, objectionable, as the reservoir is made, as before stated, of thin material, and, in tightening the nuts on the free ends of the yoke, it constantly weakens and finally crushes the reservoir especially when handled by inexperienced persons.   Another objection to the usual form of reservoirs is the method of attaching the conduit pipe thereto, which is usually done by simply flanging the upper end of the conduit pipe, and then soldering the same to the bottom of the reservoir.   This is objectionable, in that the conduit pipe is generally quite long, and the perpetual jolting and shaking of the same, caused by the entrance and passage of the chain, and its respective flights there-through, causes the soldering to soon break away.   My invention contemplates means for remedying these many objections, as will be seen by referring to the drawings," etc.

The main device for remedying these defects is shown and stated to be a metal plate arranged within the reservoir through which fastening devices pass engaging the spout on one side, the reservoir on the other, and the pump-curb between them, whereby these parts are clamped together; the reservoir thereby being held firmly in place, thus doing away with the necessity of the yoke or stirrup-shaped bar of metal formerly used, which was claimed to weaken, and finally to crush, the reservoir. Incidentally, this firmer fastening of the reservoir to the pump-curb affords a more rigid support for the tubing suspended from said reservoir, and minimizes the perpetual jolting and shaking of the same which causes the soldering soon to break away.

In the patent, as granted, these features are further specified and emphasized. The title is "pump-curb reservoir," and the specification says of it:

"This invention relates to a new and useful improvement in reservoirs for pump-curbs; and it consists in the construction, arrangement, and combination of the several parts, all as will hereinafter be described and afterward pointed out in the claims.

"The object of this invention is to provide an economical and easily-applied attaching device for the reservoir and spout, clamping the two in position on the pump-curb.

"In the drawings, A indicates the reservoir, which is preferably made of sheet metal, the four walls being complete, as shown, with the exception of the opening for the passage of water in the front wall.

"B indicates a portion of the curb, and C the tubing leading into the bottom of the reservoir A, through which a chain and its flights for elevating the water pass.

"15 indicates a plate arranged inside the reservoir A and against the front wall thereof, said plate being preferably secured in position by rivets, as shown. This plate is also provided with a suitable opening 16, which registers with an opening 17, in the reservoir for the passage of water, said opening being designed to receive the inner end 18 of the spout 19. Spout 19 is provided with a flange 20, which rests against the outer face of the curb.

"21 indicates lugs extending from flange 20 for receiving screw-bolts 22, which pass through the curb and reservoir and are threaded into plate 15, thus clamping the reservoir and spout to their respective sides of the curb.

"Plate 15 preferably covers a considerable area of the front wall of the reservoir to clamp the same firmly in position against the curb, so as to afford a rigid support for the tubing C, which is suspended from said reservoir. * * *

"Having thus described my invention, what I claim, and desire to secure by letters patent, is—   "

Then follow the claims, the first of which is quoted above, and the second is as follows:

"The combination with a pump-curb, of a reservoir formed of sheet metal comprising four walls, a plate fitting against the front wall of said reservoir, a pipe leading into the bottom of the reservoir, a spout having an inward extension opening into said reservoir through said plate and curb, a flange on said spout which bears against the outer face of the curb, and screw-bolts which pass through said flange and are threaded into said plate, for clamping said spout and reservoir to the curb, substantially as described."

As will be seen, the subject-matter of this patent is a pump-curb reservoir, and more particularly a clamping device for holding it more firmly in position, with a view to its protection and the bene-

ficial operation of the parts, particularly the tubing suspended from it. The spout is only incidentally mentioned as an element of the combination, but in no sense affected by the objections raised to prior structures. The invention contemplated particularly that class of pumps known as "chain pumps," because for them the tubing was necessary, and the strain upon the reservoir and the connections between reservoir and tubing was "caused by the entrance and passage of the chain and its respective flights." The patent as issued is not restricted to chain pumps, but that its object and that of the structures employed relate more particularly to such pumps clearly appears from the language of the specifications and from the drawings filed in connection therewith and referred to therein.

Subsequently, for reasons of economy and utility, complainant departed, in this pump at least, from the chain mechanism and adopted a bucket mechanism. In the latter the water is carried in buckets and discharged into the reservoir from the top, instead of being sucked or drawn through tubing from the bottom. This does away with the necessity for tubing and the jolting and shaking incidental to the passage of the chain through it. Consequently the independent four-wall reservoir is no longer a necessity; but economy is attained by using the front and sides of the pump-curb itself for three of the walls, a back wall and bottom being supplied in a separate piece which is soldered to the sides and front wall of the curb. Into this the water is poured from above by the buckets in their flight, and finds its way out through the spout as before. The metal plate, therefore, no longer performs the office of attaching the front wall of the reservoir to the pump-curb for which it was especially designed and described. The element of an independent reservoir and of the front wall of such a reservoir is omitted. The plate still remains in place now directly against the inner wall of the curb, and through this and the curb the fastening devices are passed which secure the spout on the outside of the curb in place. This construction is substantially employed by both complainant and defendant, and it is the use by defendant of this plate, in this position, that is urged as an infringement of the complainant's mechanical patent. The utility of the plate in its present position is now said to be the stiffening of the front wall of the curb, whereby the spout is held more firmly than if attached to the thin wall of the curb by the usual bolts, screws with nuts, or other devices, unsupported by the more rigid plate. The defendant contends that the present use does not involve the original essential elements of the combination by which patentable novelty and invention was originally present, if at all, and that the present construction is not covered by the patent, and does not present novelty or invention in any event. Complainant urges that this is a use disclosed and protected by its patent to which it exclusively is entitled, and that the attempt thus to narrow claim 1 makes it identical with claim 2, from which it was intentionally differentiated, and that such a construction is neither just nor permissible.

It should be remembered at the outset that the patentee of the patent in suit stated in his specification that this invention relates to a new and useful improvement in reservoirs for pump-curbs; and "consists in the construction, arrangement, and combination of the several parts, all as will hereinafter be described and afterward pointed out in the claims." The claim under consideration recites the elements of the combination to be (1) a pump-curb; (2) a reservoir; (3) a spout which leads from said reservoir; (4) a plate arranged within the reservoir; (5) fastening devices which pass through the pump-curb and engage the spout and said plate for clamping the parts together, substantially as described. No doubt this refers us back to the nature of the invention thus "substantially described."

[1] This is avowedly a combination patent, and the invention consists "in the construction, arrangement and combination of the several parts" to be thereinafter "described and afterward pointed out in the claims." The parts thereinafter described and afterward pointed out in claim 1 are the pump-curb, the reservoir, the spout, the plate, and fastening devices for clamping the parts together. The object is to clamp the reservoir firmly in position against the curb so as to afford a rigid support for the tubing which is suspended from said reservoir. It is a pump-curb reservoir with which the patent is concerned, according to its title and to its specifications. Manifestly, all the elements described in the claim must be present to give to the combination the novel and useful effect specified. In the devices before the court, the plate performs merely the office of adding rigidity to the curb at the point where the spout is attached, with the separate reservoir wall omitted or merged in the curb itself. The plate becomes inoperative for the purposes specifically described. The case in this particular seems to fall within the doctrine announced in Union Match Co. v. Diamond Match Co., 162 Fed. 148, 89 C. C. A. 172, wherein it was said:

"Where the claims of a patent specify the elements of a combination, but do not specify the means whereby those elements perform their functions but call for 'means' generally, and close with the words 'substantially as and for the purpose' described, or specified, or set forth, such words import into the claims the specific means described in the specification, and the claims are limited accordingly. * * * No device can be held to infringe a combination claim of a patent, unless it employs all the elements of it. A patent for a described means or mechanism to accomplish a desired end must be limited to the particular means described in the specification, or their clear mechanical equivalents, and does not cover any other mechanical structure which is substantially different in its construction or in its operation."

In claims for combinations:

"If the patentee specifies any element as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality." Fay v. Cordesman, 109 U. S. 408, 3 Sup. Ct. 236, 27 L. Ed. 979.

It is quite true that:

"The courts are not permitted to construe a patent by reconstructing it to conform to what the court may think was in the mind of the patentee at the time." Edison Electric Co. v. E. G. Bernard Co. (C. C.) 88 Fed. 267–274.

"Infringement cannot be avoided by reading into a broad claim of a patent specific devices claimed in narrower claims of the patent." Locomotive Works v. Trent (C. C.) 92 Fed. 375–388.

But this is not such a case. Here the patentee has specified what was in his mind at the time, and what elements were necessary to effectuate his purpose. One of those elements in the sense there employed, if not entirely, is now found to be omitted. The true rule is stated by Judge Sanborn, speaking for the Court of Appeals for this Circuit, in Mast, Foos & Co. v. Dempster Mill Mfg. Co., 82 Fed. 327, 27 C. C. A. 191:

"One using the essential elements of a combination as enumerated in one claim cannot escape infringement because he does not use subordinate or unimportant elements of combinations described in other claims, and which were manifestly omitted from the claim in question that the inventor might more perfectly secure the essential elements of his invention."

But here the defendant is not using the essential elements of the combination as enumerated in claim 1. On the contrary, one element is omitted, and that the most vital one to the expressed purpose of the patent. In such cases the same court has declared:

"The absence from an infringing device of a single essential mechanical element of a patented combination is fatal to a claim of infringement." H. F. Brammer Mfg. Co. v. Witte Hardware Co. et al., 159 Fed. 726, 86 C. C. A. 202.

The case falls directly within the reasoning of the court in Dunlap v. Willbrandt Surgical Mfg. Co. et al., 151 Fed. 223, 80 C. C. A. 575. Judge Hook, in delivering the opinion, said:

"Of course, there are cases in which, in determining whether a subsequent device infringes, it is unimportant whether it is made in two pieces instead of three, or whether a member is mechanically attached to the remainder of the structure, or is made integral with it. * * * They are, however, inapplicable to a case in which the very divisibility into parts or in which the particular method of attachment constitutes the law of the structure or is declared or appears to be of the essence of the supposed invention."

Complainant invokes the rule that, while the particular function now deemed important may not have been referred to in terms in its specifications, nevertheless it inhered in the specifications and drawings and in the construction, as shown by the specifications, claims, and drawings, and therefore that complainant is entitled to it in whatever form it may be used. This would be true if this were merely a new or double use of the same combination, all the elements being present, and each performing its functions in the same way; but such is not the case. We have here practically to consider whether this claim fairly covers the mere application of a metallic plate to the galvanized iron wall of a pump-curb as a stiffening agent to render the spout attachment more rigid. As I have

said, I do not think this function can be carved and separated from the combination specifically described and declared on; but, if it can be, then we are to consider this claim as presenting such a device as involves patentable novelty and invention. Suppose the applicant had originally applied for a patent upon a combination consisting of a pump-curb, a metallic plate, and a spout with fastening devices to clamp the three together; the specific object being to stiffen the curb and make the attachment more rigid. Can any one believe that this would have passed muster from the standpoint of novelty and invention? It has been the common practice in every unskilled occupation to add strengthening layers of wood or iron to parts deemed too unstable for purposes of reinforcement. This would occur readily to the lay mind, not to speak of that of the skilled mechanic. No invention is involved in such procedure. Crouch v. Roemer, 103 U. S. 797, 26 L. Ed. 426.

[2] I am therefore of the opinion that there has been no infringement of the patented combination, and that in the aspect here presented the mechanical device patented lacks both novelty and invention.

[3] To my mind, the design patent presents greater difficulties, because the solution of the controversy is addressed to the individual senses rather than to general rules of law. The principles involved are simple, but the decision must always, in large measure, be governed by the impressions of the chancellor in each specific case. Section 4929 of the Revised Statutes (U. S. Comp. St. 1901, p. 3398), as it existed prior to the amendment of 1902, limited a design patent, so far as is pertinent to this case, to "any new, useful, and original shape or configuration of any article of manufacture, the same not having been known or used by others before his invention or production thereof, or patented or described in any printed publication." It is conceded that the intention of Congress by the acts granting design patents was to encourage the decorative arts. Utility is not contemplated, but appearance. Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731. The exercise of the inventive faculty is just as essential to the validity of a design patent as it is to the validity of a patent for any kind of mechanical device. Smith v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606. The usefulness referred to is not mechanical utility, but the presentation of something new and pleasing by which the value of the object is increased, and originality and the exercise of the inventive faculty must be displayed from the standpoint of prior use, prior patent, or prior publication. "The attempt to patent a mechanical function, under cover of a design, is a perversion of the privilege given by the statute." Weisgerber v. Clowney (C. C.) 131 Fed. 477–480. The article may be useful, as well as ornamental, but this adds nothing to the validity of the design patent. Designers of articles of manufacture not otherwise entitled to receive design patents cannot justify the issuance of such patents on any theory that the design is a trade-mark. Rowe v. Blodgett & Clapp Co., 112 Fed. 61, 50 C. C. A. 120. The utility

depends entirely upon the pleasing effect, if any, imparted to the eye. General Gaslight Co. v. Matchless Mfg. Co. (C. C.) 129 Fed. 137. There must be present originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius— an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, beautiful, or useful they may be in their new role, is not invention. Smith v. Whitman Saddle Co., 148 U. S. 674–679, 13 Sup. Ct. 768, 37 L. Ed. 606.

· Such are the general principles to be kept in mind when perception and judgment are to be applied to any particular case. It is evident that the mere fact that one device looks like another has no controlling effect in determining the validity of a design patent, because such a patent does not operate as a trade-mark nor involve considerations of unfair competition in trade. In fact, in the present case, the latter consideration was expressly eliminated when the demurrer was sustained to certain parts of the bill as originally filed. Color constitutes no element of a design patent. The question before us then would seem to be whether the complainant's pump-curb presents an article of manufacture so new, useful, and original in shape or configuration, so pleasing to the eye, and so indicative of inventive genius in any appreciable degree, as to sustain the validity of this patent. If so, there is undoubted infringement, because the defendant's curb is sufficiently like it to sustain such a charge.

Pump-curbs of this type, departing from the shape commonly employed in the old wooden chain pump, have been substantially and suggestively similar. In fact, the shape in a general way has been dictated in no small degree by the requirements of the mechanism encased by the curb. There have been variations in size and in details, but, aside from the latter, general terms of description would fit most of them, including those now before the court. None of them, to my mind, can fairly be termed beautiful or ornamental. It would be rather strained to associate them, in any sense, with the decorative arts which this statute was intended to foster and encourage. The object of this design evidently was to present a shape differing in minor particulars from those that had preceded it, with a view to stamping this product after the analogy of trade-marks. If this satisfied the statute, then the obtaining of a design patent would be a mere formality and the entire spirit and purpose of the act would be evaded and defeated. In 1895, three years before the issuance of this patent, O. P. Shriver, as patentee, procured design patent, No. 24,116, for a curved curb for chain pumps. This curb is similiar in its general outlines to that of the patent in suit. It would appear that slight variations have been made in the curved lines of sides and edges. The cap is, perhaps, a little more shallow. The band or beadwork separating the cap from the body is not unlike. The top of the curve is described as a "compound curve," while that of the Shriver patent is a "simple curve." I do not think it required more than ordinary mechanical

skill to make the alterations here apparent. I am unable to perceive that this device satisfies the demands of the statute under which the design patent was issued.

For all the foregoing reasons, the bill will be dismissed, and an appropriate decree may be drawn in accordance with this opinion.