## BELSTEEL CO. et al. v. LORAIN STEEL CO.

(District Court, W. D. Pennsylvania. September 19, 1914.)

No. 25.

PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—PORTABLE CROSS-OVER.

The Kerwin patent, No. 1,000,270, for a portable cross-over for temporarily connecting parallel street car tracks during repairs, etc, is void for anticipation and lack of invention, and the device is also of doubtful utility; also *held* not infringed, if conceded validity.

In Equity. Suit by the Belsteel Company and John Kerwin against the Lorain Steel Company. On final hearing. Decree for defendant.

Bakewell & Byrnes, of Pittsburgh, Pa., and Frank Parker Davis, of Chicago, Ill., for plaintiff.

J. E. Little, of Pittsburgh, Pa., for defendant.

ORR, District Judge. The bill in this case charges defendant with infringement of letters patent of the United States No. 1,000,270, issued to the plaintiff Kerwin and to one Robert Belknap on August 8, 1911, for a portable cross-over. The answer denies the validity of the patent for want of utility and invention and by reason of prior use and prior patents.

The title to the patent is in the plaintiffs in equal shares. The plaintiff corporation is a corporation of South Dakota. It is merely the licensing company. Neither of the plaintiffs manufacture the apparatus of the patent. A number of licenses have been granted, but up to the time of trial royalties had come but from two of the licensees.

The patentee in his specification gives a statement of the uses of cross-overs, an explanation of inconveniences in the use of ordinary cross-overs, and a declaration of his object in the following words:

"My invention relates particularly to portable cross-overs for use in repairing street railroad or other similar tracks, where there are two or more parallel tracks used to accommodate the traffic in opposite directions. When repairs are to be made along such a line of tracks, it is customary to treat a comparatively short section of one track at a time, and for this purpose the traffic is customarily shunted around the section undergoing repairs, on the parallel track, which is used for the time being for traffic in both directions; temporary cross-overs being necessarily installed beyond each end of the portion of track which is out of commission to transfer the traffic to and from the adjoining track. It has been necessary heretofore to construct these temporary cross-overs in situ; the rails, frogs, and other necessary parts of the cross-over being conveyed to the place where it is to be located and there assembled. The disadvantage and inconvenience of this method of constructing cross-overs has long been recognized, and it has been proposed to avoid the same by so constructing the cross-overs that they may be in the main carried on a suitable car in an assembled condition. With this in view, the parts have been made as light and few as possible. But even so it has been found impracticable to handle and convey the cross-overs in this manner, so that to the best of my knowledge no such devices have ever gone into actual use.

"It is the object of my invention to construct a portable cross-over that may be conveyed from place to place without being knocked down or disassembled, and which may be readily handled by the means ordinarily at the disposal of those engaged in such repair work. With this object in view

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

I construct a cross-over of material which may be of the usual weight and strength, and which is preferably of the standard form employed where the cross-over is set up in situ. It is equipped, however, with suitable means whereby it may be hauled or slid on the rails of the track to be repaired; suitable traction means, such as electric or other motors or horses, being employed for that purpose."

The claims of the patent are as follows:

"1. A cross-over having pairs of longitudinal rails and cross-over rails rigidly connected together, means on the rails adapted to engage the permanent rails, the cross-over as a unitary structure being free to slide longitudinally upon the permanent rails.

"2. A portable cross-over having the usual longitudinal rails and cross-over rails, shoes upon the longitudinal rails adapted to engage and slide upon the rails of a permanent trackway, and tie rods connecting the rails of the cross-over formed with shoulders and reduced ends, the ends being slotted and provided with keys."

The elements of claim 1 need only be considered, because additional elements found in claim 2, to wit, the slotted tie rods, etc., are not used by either of the parties and are not involved in the controversy. The elements of claim 1 are: (a) Pairs of longitudinal rails; (b) pairs of cross-over rails; (c) rigid construction; and (d) means on the rails adapted to engage the permanent rails.

Reserving for further consideration the claim of freedom of movement on the permanent rails, the foregoing elements may be considered in few words. They are all found in each of the following United States patents: No. 72,185, to B. C. Galoin, dated December 17, 1867, for an improved railway switch; No. 73,071, to T. G. Beecher, dated January 7, 1868, for railway switch; No. 381,874 to A. V. Du Pont, dated April 24, 1888, for portable connecting switch; and No. 678,987, to H. C. Stiff, dated July 23, 1901, for portable connecting track. The mere examination of these patents is all that is necessary to reach that conclusion.

It is a fair conclusion from all the evidence that plaintiffs base their allegation of patentable novelty upon the capacity of their structure to slide. Their evidence and arguments were especially directed to the fact that their structure was one adapted to slide upon the permanent rails. While that is a fact the movement as contemplated by the patentee is limited to straight permanent tracks. The structure of the plaintiffs rests upon shoes, which are of such construction and bear such relation to the permanent track that a portion of the shoe fits into the groove of the permanent track. This prevents lateral movement of the rails of the cross-over with respect to the permanent tracks, and permits movement along the permanent tracks when sufficient force is applied. Shoes, however, possessing the same function, have been long used in the making of cross-overs.

The defendant company is successor of a corporation referred to the record as the Johnson Company. The defendant and its predecessors, for 26 years and upwards, have been making portable cross-overs under various patents, notably the Du Pont patent hereinabove mentioned. The early cross-overs were as light as possible, having due regard to the uses for which they were intended. Specially was it deemed desirable that the tracks of the cross-overs should not be ele-

vated above the surfaces of the streets to such a degree as to interfere with travel. To prevent their longitudinal movement as the cars entered thereon, they were clamped to the permanent rails or fastened to the bed of the roads. To prevent their lateral movement with respect to the permanent rails, many of the cross-overs rested upon and were riveted to pieces of metal, in the nature of shoes, whose sides projected downward on each side of the permanent rail, thus preventing the lateral movement. Some were made with pieces of metal, in the nature of shoes, having on one side extending downward a flange to engage one side of the permanent rails, and having an extension downward in or near the center of the lower part of the shoe to engage in the slot of the permanent rail, at least to such an extent as to operate in connection with the downward flange to prevent the lateral movement. It is a fair conclusion from the evidence that at no time was there a cross-over standardized with respect to its length, because of various widths between the permanent tracks upon which one might be used.

The defendant, as early as 1905, at least, made a cross-over, known in the case as the "Philadelphia cross-over," according to the needs of the Philadelphia Traction Company, as demanded by the engineers of that company. That cross-over was of very rigid construction, with much heavier rails than appear to have been earlier used. It had shoes on it similar in form to the Kerwin shoe, except that they were not so thick as the Kerwin shoe and the ends were not rounded. The fact must be found that that cross-over was adapted to slide, if the fastenings to the permanent rails were removed. Many of the cross-overs made prior to that time were adapted to slide when sufficient force was applied to them, as in one instance when crowbars were used, causing the cross-over to slide from place to place along a straight track as required.

There was introduced into the case a letter from the chief engineer of the Lorain Steel Company and drawings made by the Lorain Steel Company as in accordance with the requirement of the Indianapolis Traction Company for a cross-over to be made for the latter. This cross-over was never built, yet that letter and the drawings contemplated the use of fairly heavy T-rails and great rigidity of structure. These were not admitted as showing prior use, but as throwing light upon the state of the art to which the patent in suit related at their date in 1906.

The demand for heavy cross-overs of rigid construction is due to the increased weight of the cars which they are required to support. The use of T-rails and the numerous tie rods and bracings, as they appear in the plaintiffs' structure, cause the top of the structure when in use to be about 7½ inches above the level of the street in which it is used. Such an obstruction would seriously interfere with the travel on the street, and creates grave doubts of the utility of the plaintiffs' device. It is a matter of common knowledge that in many municipalities the streets are so narrow that, when one street railway track is being repaired, the street could not be used if there was an obstruction on the

other track to the height of 7½ inches, with its exposed rails and tie rods.

Looking at the plaintiffs' device in every aspect of the case, we are satisfied that there was no invention in making the cross-over strong and rigid, that the apparatus as designed to be used is of doubtful utility, and that all the elements of the claim in dispute are met together in the prior art. Further, the elements of the patent as combined do not perform a new function, for anything can be moved if it be strong enough to resist obstructions and sufficient force can be applied. The patent, therefore, is invalid.

A few words only are necessary with respect to the question of infringement. There was no evidence that the defendant ever did slide a cross-over. The cross-overs made by it, according to the admitted drawings, are not more adapted to slide than were the old cross-overs made by it. The shoes upon which the cross-over rests are not imitations of the shoe of the patent. They are of a different design. They have the same functions, however, as the old shoes of the defendant. The defendant could not be enjoined from sliding its old cross-overs resting upon the old shoes. Therefore it should not be enjoined from making the cross-over complained of, if purchasers from it see fit to make it slide.

It follows, therefore, that the patent is void, and that no infringement was proved, and therefore the bill must be dismissed, at plaintiffs' costs.

Let a decree be presented.