BELSTEEL CO. et al. v. LORAIN STEEL CO.

(Circuit Court of Appeals, Third Circuit. November 10, 1915. Rehearing
Denied December 15, 1915.)

No. 1955.

PATENTS ⊚⟶328—INVENTION—PORTABLE CROSSOVER.

The Kerwin patent, No. 1,000,270, for portable crossover for use on
street railroad tracks, *held* void for lack of patentable invention, in view
of the prior art.

Appeal from the District Court of the United States for the West-
ern District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Belsteel Company and John Kerwin against
the Lorain Steel Company. Decree for defendant, and complainants
appeal. Affirmed.

For opinion below, see 217 Fed. 412.

Frank P. Davis, of Chicago, Ill., for appellants.

C. C. Linthicum, of Chicago, Ill., and J. E. Little, of Pittsburgh, Pa.,
for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit
Judges.

WOOLLEY, Circuit Judge. This is an appeal from a decree of
the District Court of the United States for the Western District of
Pennsylvania, dismissing a bill of complaint charging the defendant
with infringement of Letters Patent No. 1,000,270, granted August
8, 1911, upon an invention of John Kerwin, and now owned by the
complainants.

The defenses are invalidity and non-infringement. If the patent is
valid, infringement is found.

The invention relates to portable crossovers. Crossovers are struc-
tures for temporarily diverting street car traffic from one track to an-
other during the repair or renewal of a part of a track. They are
composed of two parallel tracks of straight rails, connected by one
crossover or switch track of curving rails, and when in place the
straight parallel rails overlie the straight rails of the permanent tracks.
The straight rails are supplied with shoes on their lower side, which
rest upon and sometimes grip the permanent rails, and sometimes
contain spike plates by which the structure is more securely fastened
to the roadbed. The uses of crossovers, the cost and inconveniences
incident to their operation, as well as the character of the invention
of the patent in suit and the claims therefor, appear in the opinion
of the District Court, reported in 217 Fed. 412.

All crossovers contain one general theory of construction, dictated
by the character of the use to which they are put. All are composed
of two pairs of longitudinal tracks, connected by a track crossing from
one to the other. In crossovers of older types, the tracks and connec-
tions were separate and detachable parts of the structure, which were
assembled and joined together at the point at which the crossover was
to be used, and thereafter the parts were disconnected and separately

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

moved. This is known as a knockdown type. The idea of Kerwin was to make a united crossover instead of several connecting parts, capable of being pulled along the rails as one complete structure without disconnecting its parts or moving them separately.

The elements of the two claims are, (a) pairs of longitudinal rails; (b) pair of crossover rails; (c) rigid construction; (d) means to engage the permanent rails; (e) thereby developing a capacity in the unitary structure to slide longitudinally upon the permanent rails. The first four are elements of the claims. The last is rather a result of the combination of the four.

In the early street railway construction, rails were of the flat or stringer type without a web or base flange, and crossover rails were of the same kind. Subsequently, the girder rail came into use in track construction, and a little later the same type of rail came into use in crossover construction. The parts of the first crossovers were detachably connected for convenience in handling, and also switches and frogs, switch points and mates were separately formed and bolted together so that they could be readily disconnected and moved and again connected in a new position.

Of a type containing many detachable parts, the invention in Galvin's Patent No. 72,185, granted December 17, 1867, and the invention in Beecher's Patent No. 73,071, granted January 7, 1868, are illustrations. The invention of the Du Pont Patent No. 381,874, granted April 24, 1888, the patent under which the defendant has manufactured crossovers for years, also contains detachable parts, as does the invention of Johnson, Patent No. 393,985, granted in the same year. In these patents granted in those early days, there were no connections, rigid or otherwise, between the pairs of longitudinal rails or the pair of crossover rails, either for the purpose of holding them in place or for the purpose of moving them from place to place.

As the art advanced, the detachable parts of the crossover became fewer in number, and by the use of frogs and webs, the structure became more rigid. This is disclosed by the defendant's catalogue of the types of crossovers it manufactured in 1891, 1892, 1894, 1895 and 1896, being improvements and modifications of the Du Pont invention.

The first patent disclosing connections between the rails to effect rigidity and secure its advantages, is the Stiff Patent No. 678,987, granted July 23, 1901, in which the longitudinal tracks are braced by tie rods and their connection with the crossover tracks stiffened by heavy webbed frogs. In the defendant's catalogue of 1904, it appears that the defendant in that year altered the construction of its crossover by adding the tie rod bracing suggested by Stiff, this being the second pronounced advance in increasing the rigidity of the knockdown type of crossovers. In 1905, the defendant manufactured what has been termed in the evidence the "Philadelphia Crossover," which discloses a further stiffening of the longitudinal tracks by the use of webs and of tie rods connected with the rails at angles intended to give them a great rigidity. Tie-rod rigidity was given to the type shown by the defendant's catalogues of 1906 and 1910. As time went on, the detachable parts of a crossover manufactured by the defendant

became fewer in number, until in 1910 the structure, when assembled, consisted practically of two parts, one, a pair of longitudinal rails connected by tie rods, with a part of the crossover rails projecting, and another, a pair of longitudinal rails likewise connected by tie rods, with the remainder of the crossover rails projecting, so that, first, each of the two parts of the structure might be moved as a unit, and second, when moved, might be joined by connecting the extending ends of the rails of the crossover track. This being the state of the art when he entered it in 1911, Kerwin adopted the theory and used the elements of the old structure, but effected a more rigid construction by using a T. rail and uniting all the parts by rigid tie-rod connections.

It would therefore seem that the sole structural novelty in the Kerwin invention is in making the parts of the device more rigid, and that the only novel function of such rigid construction consists in its capacity to slide. The issue reduced to one question is—is there anything patentable in making the structure so rigid that it will slide bodily? It is contended by Kerwin that his structure was the first that could be slid. This is denied by the testimony of the defendant. It is also contended that Kerwin's structure could be more cheaply moved. This is not controverted by the defendant. It is conclusively shown that Kerwin did not invent the first crossover that could be moved as a unit, although we think that it is shown that Kerwin's crossover is more cheaply and perhaps more easily moved.

The controversy respecting the shoes of the structure need not be repeated in this opinion. Shoes on crossovers were old in the art and were used for several purposes, one of which was to decrease friction with the permanent rails when being moved.

The claims of the patent do not cover the movable characteristic of the structure, but are for certain elements of the structure which make it capable of being moved. Of these, the element of rigidity constitutes the sole claim to invention, and claiming invention in the rigidity employed, the patentee relies more upon the degree of rigidity than upon the fact of rigidity. Upon the question whether the increased rigidity of the Kerwin structure constitutes patentable invention, we concur with the conclusion of the learned District Judge, that "there is no invention in making a crossover stronger and more rigid" than other crossovers, even when the result is a crossover capable of being more easily moved. The fact that the result is an improvement over what existed before, does not determine it to be the result of invention, and if the means to produce the improved result are such as not to involve invention, they are then not entitled to be patented. The question remains as before, does invention lie in making a stronger and more rigid crossover. We think it does not, and therefore find the patent invalid.

The decree below is affirmed.