### E. A. McMILLIN CO. v. ANDROSCOGGIN PULP CO.

(District Court, S. D. Maine. July 29, 1923.)

No. 833.

1. Patents ⊕328—1,173,290, for cloth board, void for lack of invention.

The McMillin patent, No. 1,173,290, for an improved cloth board, the essential feature of which is that the edges of the board, which is composed of laminated pulpwood, glued or cemented together, as used in the prior art, are bound with narrow strips of heavy paper, claimed to greatly strengthen the board, *held* void for lack of invention.

2. Patents ⊕16—No general test of patentable invention.

The question of patentable invention must be determined in each case on its own facts, there being no general test which can be applied in all cases.

3. Patents ⊕37—Strengthening agents must be novel to be patentable.

Strengthening and reinforcing agents are improvements in any art, but invention in such agents is to be found only in discovering a new principle or employing new means embodying an old principle.

In Equity. Suit by the E. A. McMillin Company against the Androscoggin Pulp Company. Decree for defendant.

Roberts, Roberts & Cushman, of Boston, Mass., and Woodman, Whitehouse & Littlefield, of Portland, Me., for plaintiff.

Fish, Richardson & Neave and Hector M. Holmes, all of Boston, Mass., for defendant.

HALE, District Judge. This suit in equity is for infringement of claim 1 of United States patent No. 1,173,290, dated February 29, 1916, for an improved cloth board. The patent was issued to the plaintiff corporation, pursuant to assignment from the inventor, Edward A. McMillin.

---

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The first question to be considered is the validity of the patent. The subject-matter of the patent is adequately stated in the first claim, to wit:

"(1) A cloth board of the character described, composed of a plurality of sheets of pulp board laid up with adhesive cement under pressure, and having its lateral edges bound with a smooth, tough fabric to protect against abrasion and separation of the sheets, substantially as specified."

In the specification it is stated that the invention relates to so-called "boards" upon which cloth may be wound to preserve and protect it, in its finished state, and to "facilitate shipping, transporting, and handling it." The object stated by the patentee is:

"To provide a cloth board which shall be very light, thin and stiff, and yet be able to withstand the contractile pressure of the bolt of wound cloth, which is very great and exerts a powerful tendency to crush or double up the flat vehicle upon which it is wound unless it is transversely very stiff."

The specification then goes on to state:

"Thin wooden boards have hitherto been extensively used for such winding purposes, but to be suitable for the duty required of them they must be sound and free from shakes, knots and gummy streaks. If shaky, the contraction of the wound cloth will cause them to split and come apart along the shaky line, thus destroying the core support for the cloth, and permitting the buckling and doubling up of several of the innermost convolutions of the cloth and thus wrinkling and spoiling its salability. Knots and streaks which exude gum also tend to soil and damage the goods wherever they come in contact with the fabric. As the supply of wooden boards of suitable quality has fallen off and their cost has greatly increased, a demand has arisen for some kind of a substitute for wood which will be cheap, light, and capable of holding its shape under the stress of the contraction of the wound cloth, so that the windings next to the board shall remain uninjured from any external or internal strain or pressure to which the board may be subjected in shipping, transporting, packing, or handling, and at the same time the board shall be perfectly clean and free from anything which will tend to soil or injure any fabric wound upon it, and shall also be free from any tendency to split.

"For the purposes mentioned, I have provided a composite board made up of layers of wood pulp board united under pressure by a strong adhesive paste or cement. The sides of this structure are covered with paper to render them smooth, and the edges and ends are bound with a tough, strong paper capable of withstanding hard service and rough usage."

The specification then describes in detail how the cloth board shall be made:

"In the manufacture of these boards I preferably use a board made from some kind of fibrous pulp, such as straw or wood, produced on a cylinder paper machine, as such a machine produces a sheet in which a large preponderance of the fiber is laid longitudinally or lengthwise of the sheet, so that the sheet resists crosswise tearing. Such a sheet will also resist bending or rolling up lengthwise of the sheet better than crosswise."

After referring to the board, the patentee says:

"The several sheets or sections of the composite board are each cut to a definite size and shape, so that when assembled their edges will register perfectly. They are then laid up in a strong paste, glue, or adhesive cement which possesses the property of drying thoroughly hard and firm without any tendency to crack or crystallize. They are laid up with the grain of each piece disposed across that of the adjacent piece, so that the tendency of any layer to warp in any direction will be counteracted by the tendency of its adjacent layers to warp in a different direction; this neutralization of the

warping tendencies of the several layers being confirmed by the rigidity which the dried cement imparts to the whole piece.

"After the constituent layers of the piece have been consolidated by pressure and the structure has thoroughly set and dried, its edges are bound by firm, tough, and strong strips of paper binding (as shown in his drawing) and its ends by similar pieces (as shown in his drawing). The corners of the board are chamfered and bound (as shown in his drawing) which prevents separation of the layers at those points from use and prevents the corners from fraying out.

＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊    ＊

"In service in the winding process the board is supported by a thin, stiff integral metallic plate which is preferably a little narrower than the width of the cloth board which it carries. This difference in width, although not indispensable or essential, to successful operation, permits the cloth to be drawn directly across the edges of the cloth board during the winding process, thus creating a tendency in the board to yield to the winding strain put upon it and curl or warp to conform to the shape of the coils of the cloth around it, which tendency is successfully met by the rigidity imparted to the board by the crossed grain of the several layers of which it is made up secured by the adhesive, hardened cement with which those layers are bound together."

Then follows claim 1, which I have already quoted.

It appears that the cloth board for which the patent is sought must be composed, first, of a plurality of sheets of pulp board laid up with adhesive cement under pressure; and, second, it must have its lateral edges bound with a smooth, tough fabric to protect against abrasion and separation of the sheets. Upon reading the specification it is seen that the patent contrasts the board for which patent is sought with the wooden board of the prior art, and that the patentee seeks to present a pulp board light, but able to withstand contractile pressure from the cloth, and to give the board strength by binding its lateral edges with a smooth, tough fabric.

The patentee used for comparison only the old wooden cloth board; upon that he claimed his improvement. He did this, he says, with the intention to produce for the cloth manufacture a board for the finer grades of cloth, which should take the place of the wood board, and the Patent Office confines its statement of the prior art to wood boards only.

It is clear, however, that the prior art consisted, also, of the use of three or four pieces of laminated pulp board glued together. It is claimed that the patentee found the defects of this structure to be due to lack of stiffness, and that such lack of stiffness tended to make the structure split or separate and spill dirt and fragments; that the purpose of the patentee was to make something out of pulp which would not allow the splitting which was producing the trouble in the wood board, nor the lack of stiffness and tendency to open and spill dirt which was found in the structure composed of laminated pulp board. The patentee sought to overcome these difficulties by binding the long sides of the laminated boards with a narrow strip of tough paper; and this is his invention. He said he did this to give strength to the structure, and that the result showed that:

"Kraft paper, cemented over the side edge of the laminated pulp board. resulted in an increase of stiffness of the combined structure from 30 to 100 per cent."

Let us take the plain, laminated pulp board cloth board as the standard of comparison. The substantial claim of the patentee is that the change in this structure by binding the sides of the laminated pulp board made the difference between failure and success; between a defective and a satisfactory pulp board; and that all the intrinsic evidence shows that the structure, as a whole, characterized by the change produced by the binding, presents a patentable invention; that extrinsic evidence of invention is found in the fact that 30 to 100 per cent. of strength is claimed to be added to the old structure by the binding; and that the manufacturer of cloth boards pays from 50 to 100 per cent. more for plaintiff's cloth board than for the old unbound laminated cloth board.

[2] Courts have not found an easy task in deciding questions of patentable invention. In New Jersey Zinc Co. v. American Zinc, etc., Co. (D. C.) 276 Fed. 733, 738, this court pointed out the difficulty of determining whether a case is within the reasoning of Loom Company v. Higgins, 105 U. S. 582, 26 L. Ed. 1177; or Atlantic Works v. Brady, 107 U. S. 200, 2 Sup. Ct. 225, 27 L. Ed. 438. No entirely satisfactory test has ever been found by which a line can be drawn between the product of the inventor's intuition and the results of the mechanic's skill. Each case must depend upon its own facts. In Butler v. Bainbridge (C. C.) 29 Fed. 142, 143, Judge Coxe has said that the perplexities which surround such controversies cannot always be solved by an examination of adjudged cases.

"They serve to illuminate the paths to be traversed; but he who desires to select the right one must depend largely upon his own judgment."

It is the duty of courts sitting in patent cases to recognize invention when they meet it; but it is also clear that it is their duty not to extend such recognition to mere mechanical skill. I cannot uphold the contention of the plaintiff that the lateral binding of the wooden board, or of laminated pulp board, with strong paper is invention. The ordinary uses of binding are to give some strength to a structure. The fact sought to be shown, that the lateral binding of the laminated pulp board produces a surprising amount of strength, does not, in my opinion, bring it into the field of invention. No novel idea is developed, and, in my opinion, no patentable invention is presented, however great the improvement may be.

[3] Strengthening and reinforcing agents are improvements in any art, but invention in such agents is to be found only in discovering a new principle, or employing new means embodying an old principle. Turner v. Lauter Piano Co., 248 Fed. 930, 161 C. C. A. 48; Crouch v. Roemer, 103 U. S. 797, 26 L. Ed. 426; Star Bucket Pump Co. v. Butler Mfg. Co. (D. C.) 198 Fed. 857; Walker Mfg. Co. v. Illinois Brass Mfg. Co. (C. C. A.) 265 Fed. 279; Moline Plow Co. v. Omaha Iron Store Co., 235 Fed. 519, 149 C. C. A. 65; Miner v. T. H. Simington Co., 247 Fed. 515, 160 C. C. A. 25; Belsteel Co. v. Lorain Steel Co., 227 Fed. 240, 142 C. C. A. 30. Courts have often said that marked improvement and progressive steps in an art are not, in themselves, evidences of invention. As industry progresses, more skill of

the mechanic is expected. New Jersey Zinc Co. v. American Zinc, etc., Co. (D. C.) 276 Fed. 733, and cases cited.

The extrinsic proofs do not satisfy me that the commercial results, produced by this patent alone, are sufficient, with the other evidence in the case, to show invention. I am not unmindful of the fact that the action of the Patent Office in granting a patent should have weight in determining the patentability of an invention. In the case before me the proofs do not show that anything in the prior art was before the Patent Office except the wooden cloth boards; it is clear, however, that the salient feature of the alleged invention related to binding together laterally layers of pulp board. I fail to find much assistance on this point from the study of the file wrapper and contents.

After an examination of the whole case I am forced to the conclusion that the claim at issue in the patent in suit does not present a patentable invention. The patent is therefore declared to be invalid. A decree may be presented, dismissing the bill, with costs.