MEYERS v. APCO MOSSBERG CORPORATION.

No. 3330.

District Court, D. Massachusetts.

Feb. 15, 1932.

Jesse A. Holton and John W. Gorman, both of Boston, Mass., and Joshua R. H. Potts and T. Bertram Humphries, both of Philadelphia, Pa., for plaintiff.

James R. Hodder, of Boston, Mass., for defendant.

BREWSTER, District Judge.

In this proceeding in equity the defendant is charged with infringement of letters patent No. 1,770,420, issued July 15, 1930, to Franklin Nicholas Meyers, on his application filed April 2, 1928. The patent relates to a device for wiping oil gauge rods, to be attached to automobile engines. The plaintiff claims as assignee of the patentee. The defenses are (1) anticipation, (2) want of invention, and (3) noninfringement.

### Statement of Facts.

To show the state of the patented art when Meyers came into the field, defendant has cited seven patents, issued betwen 1906 and March 27, 1928.

Of these patents, three of the earlier relate to devices for polishing, sharpening, and cleaning knives. While several of the original claims of the patent in suit were rejected on these earlier patents, I do not deem it necessary to describe them except by reference. They were: Hutchinson, No. 836,189, issued November 20, 1906, on a knife-polishing device; Schwartz, No. 1,059,491, dated April 22, 1913, on a knife sharpener; and Omoto, No. 1,219,993, dated March 20, 1917, relating to a knife-cleaning device. The other four patents relate to oil-wiping devices designed for use on automobiles in cleaning oil gauge rods and call for consideration more in detail. The general purpose of all these patented devices is well stated in the specifications for the patent to Rein and others, referred to hereafter, from which I quote as follows: "As is well known to those familiar with the art, many manufacturers of automobile engines provide gauge rods which extend into the oil sump of the engine and which, when withdrawn, are supposed to provide an indication of the depth of oil in the sump. In actual use, such rods are worthless after the engine has been operated, unless they are wiped before use, for the reason that oil splashed about in the base of the engine, thoroughly covers the same and thus fails to leave any legible indication of the ac-

tual depth of oil in the sump. Accordingly, an important object of the present invention is the provision of a device which may be conveniently positioned and which will provide a ready means for cleansing the rod of any collected oil." So far as the record discloses, the first to enter the art with an application for a patent were Rix and Sawin, who applied November 24, 1923, for a patent which was issued September 15, 1925, as No. 1,553,915. This device consisted of two members, a wiping pad of felt, or other suitable material, and a container, one end of which formed a U-shaped clip adapted to be snapped upon the oil-testing tube or to the frame of the chassis. The pad was compressed into the metal container and could be easily removed for cleaning or replacement.

Next, in point of time, was Owens, whose application was filed October 22, 1926. The patent to Owens, however, did not issue until March 27, 1928. It was numbered 1,664,316. The device disclosed by this patent also comprised a metal frame for holding wiping pads which could be attached to the engine. It differed from the earlier patented wiper in that the gauge could be drawn between two pieces of wiping material held in close proximity by the metal frame. These wiping cloths were held in place by clamping the frame down upon one edge of the cloth. On January 22, 1927, Rein and others applied for a patent for an oil gauge wiper upon which patent No. 1,652,875 was issued December 18, 1927. Substantially this device consisted of two boxlike sections of a casing, each holding a pad. These sections were brought together so that the faces of the pads were adjacent and were held by machine screws and springs in such manner that the oil gauge rod, entering through a hole at one end, could be forced between the faces of the two pads which were compressed against the rod by the spring.

Finally, we come to the patent under which the defendant claims a right to manufacture and sell the alleged infringing device. This patent is No. 1,653,315, issued to Sevigny, December 20, 1927, on an application dated April 11, 1927. Sevigny's device was an oil gauge wiper capable of being attached to the engine. Its principal elements were (1) an attaching plate, (2) a pair of narrow metallic fingers, one riveted to the attaching plate and the other "preferably pivoted thereto." The extreme outer ends of the fingers were flanged at their edges and ends which held in place strips of suitable wiping material arranged upon the opposed faces of the fingers and (3) a screw and spring holding the two fingers in tight engagement yet "permitting the gauge rod * * * to be forcibly engaged therebetween so that by drawing the same therethrough it will be thoroughly cleaned. By reason of the spring * * * these wiping strips * * * are held in frictional contact with the gauge rod, and this regardless of the diameter thereof."

It is the defendant's contention that the fourth claim of this patent reads upon the device which the plaintiff alleges to be the infringing wiper. This claim reads as follows: "4. In a device of the class described, a pair of metallic fingers, a plate forming a common attaching means for the fingers, said fingers being arranged for spacing movement therebetween, spring tension means adapted to urge the outer ends of the fingers in closed relation, and a lining of wiping material carried on the opposed faces of said fingers between which a rod may be drawn whereby to remove any foreign matter adhering thereto."

The defendant was in 1928 and for several years had been engaged in manufacturing and selling automobile accessories. Some time in the early part of January, 1928, Sevigny approached the defendant for the purpose of interesting it in manufacturing and introducing the device to the trade. Models of the wiper according to the drawings and specifications of the patent were made in January. As a result of experiments it was found that, if the attaching plate and the two fingers were formed out of one piece of metal, it would, not only lessen the cost of production, but improve the utility of the device by reducing the number of parts liable to be loosened by the continual vibration of the motor. Early in February, 1928, the defendant had decided to take a license under the Sevigny patent, and accordingly proceeded to take appropriate steps for the manufacturing of them in quantities and to place them upon the market. In the device, as finally developed, the parallel sides of the metal frame holding the wiping material, which corresponded to the "metallic fingers" of the Sevigny patent, and the plate forming a common attaching means, are all formed out of one piece of metal. There is no arrangement for spacing movement between the sides and no spring tension means adapted to urge the outer ends of the fingers in closed relation, except the resiliency inherent in the metal of which the steel frame is composed. A lining of wiping material is carried on the opposed faces of the

fingers between which a rod may be drawn, thereby removing foreign matter adhering thereto. The felt, or other wiping material, is held in place by clamping down over it one edge of the fingers, which edge is flared outwardly. It was found in actual practice that by using felt of sufficient thickness the faces of the opposed sides would be brought in closed relation, and the inherent spring of the metal would enable an oil gauge rod of any thickness to be easily passed between the felt wipers. This end was accomplished without the necessity of converging outwardly the sides of the metallic container. If, in usage or in transit, or for other causes, the sides were not exactly parallel, it was not because the convergence of the sides was an essential element in the device. It does not appear just when the defendant's devices were first put on the market, or first advertised, but it was as soon as practicable after February, 1928, when the first purchases of materials necessary for quantity production were made by it. All the defendant's devices have gone out stamped with the words "Patent 12/20/'27," which is the date of the Sevigny patent.

It was into this state of the patented and applied art that the plaintiff's assignor entered at some time prior to April 2, 1928, the date of the filing of his application for a patent. The assignor is the plaintiff's son. While the plaintiff and his son may have talked over the needs for, and utility of, an automobile gauge wiper, there is no convincing evidence that Meyers ever embodied his ideas in any model or drawings until about the time of his application. It is significant, though not controlling, that the Patent Office twice rejected all of Meyers' claims upon one or more of the cited patents. The patent finally granted July 15, 1930, contained only two claims. They read as follows:

"1. A wiper for gauge rods and the like including a casing having a back wall, side walls joining the back wall and converging outwardly, flanges on the ends of the walls, and wiping members in the casing abutting each other and held in place by said flanges and converging side walls.

"2. A device of the character described including a casing consisting of a back wall and side walls extending therefrom converging outwardly and wiping material held removably between said sloping walls."

### Conclusions of Law.

■■■ On the question of anticipation, it is apparent upon the facts that, quite independently of Meyers' alleged discovery, the de-

fendant's employees had worked out a device which, in structure but not in appearance, resembled the device disclosed in plaintiff's patent in question. It accomplished the same purposes in substantially the same way. The ends and functions of the two devices were identical. I have no doubt that the defendant was the first to conceive the ideas embodied in the two devices. Whether enough had been done toward the use or publication of the defendant's device to invalidate a patent subsequently issued to Meyers is a somewhat close question.

This question does not arise, however, if the defendant's device can be brought within the scope of the fourth claim of the Sevigny patent, which had been granted before Meyers had any thought of his invention. The specific structure of the defendant's wiper lacks the pivoting finger by which the two fingers were "arranged for spacing movement therebetween." In my opinion, it also lacks the "spring tension means adapted to urge the outer ends of the fingers in closed relation" which means, according to the specifications and drawings, were a screw surrounded by an expansible spring placed between the nut and the adjacent finger. I cannot agree with defendant's attorney that the inherent qualities of the metal supply the spring tension means adapted to urge the outer ends of the fingers in closed relation, as contemplated by the patent. Nevertheless, every essential feature of the defendant's device can be found in claim 4 of the Sevigny patent. The device, as finally manufactured and sold, was a modification of the device disclosed in the patent. For a device with several different parts joined by screws or rivets, a unitary metal casing was substituted, and the spring tension means was eliminated. The wiper, as thus modified, performed exactly the same functions as that of the one shown in the patent, and accomplished the same results in precisely the same manner. No new element was introduced which could not be found in the Sevigny patent. Under these circumstances, I think it must follow that the Sevigny patent, if we assume it to be valid, protects a licensee in the manufacture and sale of the device complained of. So far as this device resembles the plaintiff's it anticipated it.

I do agree that defendant's improvement upon Sevigny's patented wiper did not rise to the dignity of invention. I am convinced that the same is true of whatever improvements Meyers may have made upon the prior art. The discovery of the utility and feasi-

bility of oil gauge wipers, conveniently attached to automobile engines, was made several years before Meyers conceived the idea. The methods employed for accomplishing their purpose were all old. See Owens, No. 1,664,316; Sevigny, No. 1,653,315. His patent obviously was a limited one. All it embraced, as I see it, was the particular form of his case, which embodied two features claimed to be novel and a step in advance. These were (1) the flanges on the ends of the side walls, and (2) the side walls "converging outwardly."

The purpose of these suggested improvements was to prevent dislodgment of the wiping pads, and the particular advantage claimed for the device was the facility with which the felts could be removed and replaced when they became worn, or otherwise unsuitable for the intended purpose. But the idea of removable pads in oil gauge wipers was no novelty. See Rix, No. 1,553,915; Rein, No. 1,652,875. In adopting the end flanges, he only resorted to an expedient familiar to any skilled mechanic. It has been said in this court that there is no invention in adapting a well-known expedient, in the making of a device, to a specific form of the device with which it had not been used. Krentler-Arnold Hinge Last Co. v. Belcher (D. C.) 300 F. 834. Invention in improvements is to be found only in discovering a new principle or employing new means embodying old principles. McMillin Co. v. Androscoggin Pulp Co. (D. C.) 291 F. 134. Plaintiff's patent reveals no new principle and no new means embodying old principles. Patentable improvements must mark an appreciable step in advance of the existing art. (Atlantic Works v. Brady, 107 U. S. 192, 2 S. Ct. 225, 27 L. Ed. 438; National Safety Lift Co. v. Anderson (C. C. A.) 276 F. 696). In this respect the plaintiff's device falls short of the requirements of the law and must be declared invalid for want of invention.

But, if it were otherwise, the patent, as above indicated, must be limited to the end flanges and the converging sides, resulting in a case from which the wiping material may be easily removed. The defendant has adopted an entirely different method of holding the felts in place, and the felts are not removable.

The claims of the alleged patent being thus limited, there is no infringement shown.

My conclusion, therefore, is that the defendant has established all of its defenses, and that the bill must be dismissed.