## LINSCOTT SUPPLY CO. v. HOPEWELL.

(Circuit Court of Appeals, First Circuit. February 13, 1914.)

### No. 1033.

PATENTS (§ 328*)—INVENTION—ANNULAR TIRE CASE.

The Hopewell patent, No. 854,215, and the Kinder patent, No. 881,411, each for a cover or case for spare tires carried on automobiles, to protect them from water and dirt, consisting of an enveloping strip or ring of any suitable material of a width sufficient to inclose the tire and overlap its tread face and one of its sides, and having at its edge a pocket through which a gathering cord is run to hold the cover in place, both *held* void for lack of patentable invention.

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Suit in equity by Charles F. Hopewell against the Linscott Supply Company. Decree for complainant, and defendant appeals. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William K. Richardson, of Boston, Mass. (Edwin P. Corbett, of Columbus, Ohio, on the brief), for appellant.

W. Orison Underwood, of Boston, Mass. (Clarence C. Colby, of Boston, Mass., on the brief), for appellee.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. The Hopewell and Kinder patents at issue relate to a case, or cover, designed for the protection of spare tires carried on automobiles. The Hopewell patent is numbered 854,-215, and the Kinder patent is numbered 881,411.

The case, or cover, is described as one which shall twice overlap the tread-face of the tire and one side thereof. The purpose of the cover in question is to protect the tire against water and dirt, and the claims, speaking generally, cover an annular tire case adapted to overlap.

It is said in the specification of the Hopewell patent:

"It will be noticed that the tire case is ring-shaped, or made as a ring; that is, without an end."

It is urged on one side that the feature of an endless cover involves an essential idea, and one which should be accepted as presenting a substantial element of a patentable invention; while, on the other hand, it is contended that it is not an element of substance; that it was not so considered by Hopewell at the time he applied for a patent; and that if it had been deemed an essential element the idea of an endless strip would have been expressed in some of the claims.

There is considerable weight in the proposition that, if Hopewell had relied upon the endless feature as one of substance, he would have used the word "endless" in his claims, as, for instance, "an annular, endless tire case." But, for the purposes of decision, we may as well assume, in view of the statement in the specification, that the claims as explained cover a tire case without an end.

Hopewell intended that the tire case should be made of any suitable material, preferably waterproof or water-repellant material, to be composed of several pieces so united as to form a strip of proper length to cover the circumference of the tread of the tire, and of a width to inclose the tire and twice overlap its tread-face and one of its sides. It was intended that the edge of the strips so made should have a pocket to contain a cord of any suitable flexible material, which upon a pull, or upon contraction, if the cord used should be longitudinally elastic, would hold the edge of the case in proper position to protect the tire. It is highly probable that the principal thought of Hopewell, and Kinder as well, related to the idea of overlapping and to the contracting cord which should bring the edges of the strip, formed to cover the tread of the outer circle, into a circle smaller than the outer circumference of the tire. The cord used for such a purpose performs the function of holding the overlapping strip in such a position as will exclude or minimize damage from water and other material. It is hardly conceivable that much importance could have been attached to the familiar idea of joining the ends of a strip to be drawn around a fixed and determinate circle as a substantial element of an invention; and, as has

already been said, the principal thought must have had reference to the shaping of the strip and its adaptation to the outer and inner circles through the instrumentalities of a contracting cord.

In the specification the strip is spoken of as having a pocketed edge, and the cord, which is to be of flexible material, as cord or wire cord, as a thing to be located in a pocket, and under strain to pucker or contract the edge of the case into a circle smaller than the outer circle or circumference of the tire.

The employment of a cord for the purpose of contracting or gathering in the edges of fabrics, or leathers, involves no new conception, and the scheme of the patents in question involved only an ingenious adaptation of old devices to the particular use in question.

The idea of the gathering-string, cord, or ribbon of our grandmothers, which was "usually run through a shirr or tuck in a garment or other article, for the purpose of drawing it up into folds or puckers"; or the running-string of those skilled in the modern art of fitting fabrics and leathers, which is "a cord, tape, or braid passed through an open hem at the top of a bag or anything which it is desirable to draw tight at pleasure," with its manifold uses, was the idea and the thing which Hopewell and Kinder both employed as the most important element of the alleged inventions. The idea and the use of the scheme of overlapping at exposed places is as old, if not older, than the gathering-string. From time immemorial overlapping has been used in leather coverings, in clothing, particularly rubber clothing, upon horse coverings, upon ship furniture and fittings, upon army wagon trains and ordnance, in connection with tents and emigrant wagons, and in hundreds of other places where it was necessary to protect material from the ravages of water and the storms.

The point of nonpatentability is strongly urged, and we think the position fatal to both these patents.

Under a very old expression as to what amounts to invention, and, though very general, a tolerably good one, patentable invention is made to depend upon the question whether the thing described is something worthy of protection by the law, and protection by the law is spoken of, of course, in this connection in the sense of a protection which will give monopoly.

In the case of the Russell patent (American Sulphite Pulp Co. v. Howland Falls Pulp Co., 80 Fed. 395, 25 C. C. A. 500), the inventor conceived the idea of a structural lining for a wood pulp digestor which should be of one piece, and of a material which should adhere to the shell, and where the material of the lining must be acid-resisting, and the idea of the continuous structure was supplemented by the discovery that the ordinary commercial cement, like Portland cement, would stand against hot sulphite liquor; yet such a combination as that, involving the discovery of a new force in matter, has been criticised, as not answering the rules in respect to what amounts to patentable invention.

Upon the question of invention or noninvention, it is difficult to find adjudicated cases which apply themselves aptly to any new combination, or a new device, because combinations and devices in different fields are generally quite unlike, and never exactly alike in detail.

There are differences. The principles and rules which govern the question of invention are very general, and, as a result of the consequence of differences in detail and of adaptation, each case must usually, as of necessity, stand upon its own merit in respect to the question of patentable invention.

While the patentee in Andrews v. Thum, 67 Fed. 911, 15 C. C. A. 67, was dealing with a different situation from the one here, he was at least dealing with an article of manufacture, and the problem was one of protecting material which was to be kept on hand and opened up for future use when needed. There the materials used were old, yet they were rearranged and adapted, under a very useful idea, to a needed commercial purpose, with the result of getting a better and a more merchantable article. Judge Colt says, 67 Fed. at page 913, 15 C. C. A. at page 69:

"Such a rearrangement required no invention, but would suggest itself to anyone skilled in the art. It is not sufficient that the patentee may have produced a better and more merchantable article, but there must have been something novel in the means which were employed in its production."

As was said in Knapp v. Morss, 150 U. S. 221, 228, 14 Sup. Ct. 81, 84 (37 L. Ed. 1059), a case which Judge Colt uses in his discussion of the Thum Case:

"All that Hall did was to adapt the application of old devices to a new use, and this involved hardly more than mechanical skill."

And again, in the same case, the Supreme Court, taking the expression from an earlier case, says:

"All that he did was to adapt them (means in earlier use) to the special purpose to which he contemplated their application, by making modifications which did not require invention, but only the exercise of ordinary mechanical skill; and his right to a patent must rest upon the novelty of the means he contrived to carry his idea into practical application."

Tested by these rules, we are unable to find patentable invention in either the Hopewell or the Kinder patent.

Though not used in exactly the same way, both the idea of a contracting cord and of overlapping had been employed in earlier patents in the art to which the patents in question relate. The result of the adaptations or rearrangements of both Hopewell and Kinder could, we think, have been accomplished by any one skilled in the art of fitting fabrics or leathers, if given the problem of covering the tread of a tire twice and its side once, and of making the cover fit the outer and inner circles. The problem, of course, involves ingenious cutting and shaping of the strip, for the purpose of having its shape conform in a. general way to the outer and inner circles as it is drawn over and around the tire, and the scheme of a closer fit is ingeniously reinforced through the functional use of the gathering-string or contracting cord.

Holding this view of nonpatentability as to both patents, there is no occasion to consider the questions in respect to infringement.

The decree of the District Court is reversed, and the case is remanded to that court, with directions to dismiss the bill; and the appellant recovers costs in both courts.