## NATIONAL SAFETY LIFT CO., Inc., v. ANDERSON.

(Circuit Court of Appeals, First Circuit. November 29, 1921.)

No. 1524.

1. **Patents ⊚⟳328—849,357, for passenger elevator, held void for lack of invention.**

   The Ballard patent, No. 849,357, for improvement in passenger elevators, consisting of a hinged portion in the roof to prevent injury from the dropping of the car while a passenger is entering or leaving it, *held* void for lack of patentable invention.

2. **Patents ⊚⟳17—Test of "invention."**

   In order to be a patentable invention, a thing must be a discovery, a work of the inventive and creative faculty, and not merely the exercise of reason and experience, or the act of a mechanic skilled in the art.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Invention.]

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Suit in equity by the National Safety Lift Company, Inc., against Isabel Anderson. Decree for defendant, and complainant appeals. Affirmed.

Everett E. Kent, of Boston, Mass., for appellant.

Rupert L. Mapplebeck, of Boston, Mass. (Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., on the brief), for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. This suit in equity involves the consideration of United States patent No. 849,357, issued on April 9, 1907, to Edward L. Ballard, relating to a passenger elevator. The case is now

before us on an appeal from the decree of the District Court of Massachusetts, finding that the patent had not been infringed by the defendant, and dismissing the bill.

[1] The specifications of the patent begin with this statement:

"This invention relates to passenger elevators, and has for its object the prevention of injury to persons entering or leaving the car where such injuries are caused either by a premature starting movement of the car or through loss of control of the power mechanism operating the car."

The purpose of the alleged invention is thus stated:

"In accordance with my invention a car is provided having at one end thereof an open portion extending inwardly from the door opening, this open portion being normally closed by a movable closure or section mounted to yield under pressure, so as to prevent injury to a person caught between the same and a landing or like fixed part."

The invention consists substantially in making a displaceable roof section over the entrance to a passenger car, which may be so hinged that, if a passenger is caught by a sudden downward starting of the car, while partly on the car and partly on the landing, the door to the landing being in front of him, the displaceable roof section, the hinged part of the roof, will fly up, thus avoiding serious injury to the passenger. The five claims of the patent present "a displaceable roof section," or "a roof provided with an open portion extending inwardly from the door opening," and in claim 4 "a roof opening" combined with a "yieldable hinged closure for said opening."

Does this patent disclose an invention? Does the cutting away of the part of the roof of an elevator car over the entrance, making such part displaceable, and providing it with hinges, involve such use of the creative or inventive faculty as entitles the author of it to be called an inventor, and to be entitled to a monopoly under the United States patent law?

The Patent Office has issued the patent, and has thereby created a presumption in its favor, both as to novelty and utility. Railroad Supply Co. v. Hart Steel Co., 222 Fed. 274, 138 C. C. A. 23.

In construing the patent we derive no assistance from the prior art, patented or unpatented. It does not appear that any one has exploited in the field of displaceable roof sections to elevator cars. No one appears to have challenged the patentability of the invention. In Hollister v. Benedict Manufacturing Co., 113 U. S. 59, 71, 72, 73, 5 Sup. Ct. 717, 723 (28 L. Ed. 901), the Supreme Court had before it a device unquestionably new, in the sense that it had not been anticipated by any previous invention. The plain question in that case, as in the case at bar, was the construction of a patent without the aid of anything in the prior art. The court described the alleged invention as relating to a certain stamp, and showed that the question turned on that feature whereby a removable part of the stamp, the contents of which identify it with the stub, after the stamp has been attached, can be so removed as to retain its own integrity, but mutilates and thereby cancels the stamp by its removal. In speaking for the court, Mr. Justice Matthews said:

"This is what we ascertain to be the precise idea embodied in the invention described and claimed in the patent, and which, although we find to be new in the sense that it had not been anticipated by any previous invention, of which it could therefore be declared to be an infringement, yet is not such an improvement as is entitled to be regarded in the sense of the patent laws as an invention. * * * All that remains to constitute the invention, seems to us not to spring from that intuitive faculty of the mind put forth in the search for new results, or new methods, creating what had not before existed, or bringing to light what lay hidden from vision; but, on the other hand, to be the suggestion of that common experience, which arose spontaneously and by a necessity of human reasoning, in the minds of those who had become acquainted with the circumstances with which they had to deal. * * * It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the materials supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice; and is in no sense the creative work of that inventive faculty which it is the purpose of the Constitution and the patent laws to encourage and reward."

[2] It would be difficult to find the question of invention put more clearly than it is here presented by the Supreme Court. In order to be an invention, a thing must be a discovery, a work of the inventive and creative faculty, and not merely the exercise of reason and experience, or the act of a mechanic skilled in the art. Walker on Patents, second chapter; Thompson v. Boisselier, 114 U. S. 1, 12, 5 Sup. Ct. 1042, 29 L. Ed. 76; Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438; Brown et al. v. Piper, 91 U. S. 37, 23 L. Ed. 200.

It must be said, of course, that what appear to be simple devices often are found to have great merit, and that, now that a thing has succeeded, "it may seem very plain to any one that he could have done it as well." Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. But, in the cases which we have already cited, and in many others, the courts have held that, in passing upon the question of invention, we must be governed by matters of common knowledge, and by attempting to distinguish between mere mechanical devices and those which appeal to an intuitive and creative faculty of the mind.

It seems to us that any man of ordinary mechanical skill would see at once that the dangers of an inflexible roof over the entrance to a descending elevator may be avoided by displacing a portion of the roof, and, if need be, by attaching hinges to the displaced portion, and that so removing the roof section does not involve anything more than the act of an observant mechanic skilled in the art.

We must find that the patent in question is void for want of patentability. In reaching this conclusion we have allowed its due weight to the presumption in favor of the validity of the patent arising from the action of the Patent Office in granting it. But such action does not excuse us from a careful examination of the character and nature of the matter upon which the patent is sought to be sustained.

Having found that the patent is invalid for want of invention, it is not necessary to pass upon the question of infringement, although it was upon this question that the District Court based its decree.

The decree of the District Court, dismissing the bill in equity, is affirmed; the defendant appellee recovers costs in this court.