## MARLBORO WIRE GOODS CO. v. HOME ACCESSORIES CO. et al.

Circuit Court of Appeals, First Circuit. February 27, 1928.

No. 2180.

1. Patents ⬌328—1,580,847, claims 1, 2, 6–10, for wire soap dish, held invalid for want of invention.

Moineau patent, No. 1,580,847, claims 1, 2, 6–10, for a wire soap dish, *held* invalid for want of invention in substituting old wire loop or link with double wire strands for two of single strands previously employed, and welding it to frame in same manner, being rather exercise of reason and experience of mechanic skilled in art.

2. Patents ⬌328—1,580,847, claims 1, 2, 6–10, for wire soap dish, if valid, held not infringed by article without closed loops.

Moineau patent, No. 1,580,847, claims 1, 2, 6–10, for wire soap dish, being limited in specification and claims, as required by Patent Office, because of crowded art, to structure composed of "closed loops," or "loops having closed ends," *held* confined to such structure, if valid and hence not infringed by article without closed loops.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

Suit in equity by the Marlboro Wire Goods Company against the Home Accessories Company and others. From a decree of dismissal, plaintiff appeals. Affirmed.

George H. Kennedy, Jr., of Worcester, Mass. (Fowler & Kennedy, of Worcester, Mass., on the brief), for appellant.

Charles S. Jones, of New York City (J. Granville Meyers, of New York City, and Ray Henry, of Boston, Mass., on the brief), for appellees.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a suit in equity for infringement of letters patent No. 1,580,847, applied for November 4, 1922, issued April 13, 1926, to Hector Moineau, for a wire receptacle, and more particularly such article as a soap dish. The patent is now owned by the plaintiff, the Marlboro Wire Goods Company.

The defenses are noninvention, invalidity due to prior knowledge by others, and noninfringement.

In its specification the patentee states that the object of its invention is "to provide a wire receptacle constructed from closed wire loops; in other words, a receptacle wherein each component element is in the form of a closed wire loop, so that there are absolutely no free wire ends, projecting at any point."

In describing the method or manner by which the receptacle is constructed, he says first the "wires are cut to suitable lengths. Thereafter each wire is bent into the form of a loop, so that its opposite ends are brought into end abutting relation, whereupon said ends are secured firmly together preferably by welding"; that, when this has been done, "all of the elements to form the receptacle will be in the form of closed wire loops," and then "these loops may be shaped" into frame and base loops; that, this having been done, the base loops are "secured to a rigid frame" loop by welding the curved surface of the ends of the base loops to the frame loop at the points of contact therewith. He further states that "the receptacle is constructed entirely of closed loops," and that "the ends of the wire of each element are united and every part of the construction is formed of endless curves."

Claims 1, 2, 6, 7, 8, 9, and 10 are in issue. All claims in issue, except 8, call for "loops closed at both ends"; that claim speaks of them as "closed loops."

Claim 2 is fairly representative of the

first five claims in issue and reads as follows:

"2. A wire receptacle embodying a closed frame loop and a plurality of independently formed elongated loops closed at both ends and extending transversely of the frame loop and welded to the opposite sides thereof."

Claims 9 and 10 embody the same elements as the other five, and the additional one of "means associated with said frame for mounting it on a firm support." The tenth claim also embodies the further element of "means associated with the ends of the frame and depending therefrom to form the end walls of said depressed body."

The court below found that the device of the patent did not involve invention and dismissed the bill.

The soap dish of the plaintiff's patent, so far as the claims in issue are concerned, is composed of two parts: (1) A frame formed by bending a loop of wire into a rectangular shape, the ends of the wire forming the loop having been welded together; and (2) a series of elongated wire loops shaped to form the body of the dish. The ends of the elongated body loops are welded to the under side of the frame. In forming the elongated loops, a single piece of wire is bent in the shape of a link, and the butts or ends of the wire are welded together. The elongated loops or links are bent upwardly at the ends, and form the body of the dish. No novelty is or can be claimed for the frame, for frames of that character have long been employed in the art. The element of novelty, if any, resides in the elongated loop or link, and the advantages claimed for it over the single strands of wire commonly employed and welded to the frame to fulfill the same function. In the plaintiff's construction the butt ends of the wire of an elongated loop or link are welded together, and the ends of the link are welded to the opposite sides of the frame, making three welds to each loop or link. The link takes the place of two single strands of wire in a like article of the prior art and does away with one welding operation; for the four ends of the two strands of wire, in the article of the prior art, required four welding operations to unite them to the frame. Another advantage claimed for the plaintiff's article is that it obviates the labor of removing certain sharp points which may exist at the ends of the single strands where they are welded to the frame. One disadvantage in the old construction, as claimed by the patentee in his patent, is that the points are liable to scratch the user's hands, and another, claimed by the plaintiff, is that a sharp point, if not removed, is liable to crack the enamel; these receptacles being, as a rule, afterwards enameled.

[1] The evidence shows that loops or links having closed ends had long been employed in the construction of wire receptacles, and that the welding of such loops to the frame of a wire receptacle was old. This is shown to be true in the nonpatented art, as well as in the patented art. It being old to make such an article as a soap dish by taking single strands of wire shaped to form the body of the dish and welding their ends to the under side of the frame, and it being old to make receptacles embodying wires shaped to form loops or links and to weld them to a frame, the question is: Was it invention to substitute the old wire loop or link, with its double wire strands, for two of the single strands previously employed, and weld it to the frame, the same as the two single strands were welded.

We do not regard it as the work of the inventive and creative faculty. It was rather the exercise of the reason and experience of the mechanic skilled in the art, and did not involve invention. National Safety Lift Co. v. Anderson (C. C. A.) 276 F. 696; Andrews v. Thum (C. C. A.) 67 F. 911, 913; Linscott Supply Co. v. Hopewell (C. C. A.) 212 F. 403.

[2] Then again the evidence shows that the plaintiff's patent relates to a much refined and crowded art, and that the patentee yielded to the requirements of the Patent Office by limiting himself in his specification and claims to a structure composed of "closed loops" or "loops having closed ends." In this situation it seems to us that, if the patent were valid, it would be of such a narrow and limited scope as to be confined, as its specification and claims state, to a structure composed of closed loops or loops closed at both ends, and that, thus limited, the defendant's article would not infringe, for its loops are not closed loops, or closed at both ends.

The decree of the District Court is affirmed, with costs to the appellee.